R. Thomas TRETT, Appellee,

v.

**OKLAHOMA GAS & ELECTRIC COMPANY, an Oklahoma corporation, Appellant.**

No. 67352.

Supreme Court of Oklahoma.

April 4, 1989.

Rehearing Denied June 27, 1989.

Rainey, Ross, Rice and Binns by H.D. Binns, Jr., Rod L. Cook and Robert J. Campbell, Jr., Oklahoma City, for appellant.

Mordy and Mordy, Inc. by Burke Mordy, Ardmore, for appellee.

LAVENDER, Justice:

Appellee R. Thomas Trett was an employee of The Dolese Company and was employed at that company's quarry operations in southern Oklahoma. One of the company's operations was the quarrying of stone for use as railway ballast. At one of these quarry operations the stone had been exhausted and Dolese undertook plans to begin quarrying stone from an area to the east, on the other side of a county road. In order to make use of the rock crushing unit and rail loading facilities on the west side of the road, Dolese undertook plans to build an overpass bridge over the county road so that Dolese tracks could bring the stone from the east side to the facilities on the west side without worrying about traffic on the public road. Dolese began construction on this project around the middle of July in 1981.

A high voltage line owned by O.G. & E. paralleled the county road some distance to the west. Because Dolese intended to raise the grade for their road to make use of the bridge, the tracks using the completed road would be in danger of coming into contact with the electric lines. Accordingly, Dolese contacted O.G. & E. on July 17, 1981 concerning the need to relocate the line. An O.G. & E. employee met with Dolese officials at the work site shortly thereafter to assess Dolese's needs. On August 4, 1981 O.G. & E. sent proposed estimates to Dolese on various methods of relocation. On August 11, 1981 Dolese sent a check to O.G. & E. to cover the least expensive relocation alternative accompanied by a note expressing pleasure that O.G. & E. had agreed to commence work on the relocation the week of August 24, 1981.

On August 19, 1981, Dolese was well along in the construction of the new road and the bridge. On this morning Dolese employees, including appellee Trett, were engaged in moving reinforced concrete panels for placement in the bridge construction. Some fill material had already been

placed on the new road under the O.G. & E. lines. The Dolese Superintendent who was directing the panel moving operations had had one of the ten ton panels picked up by a cable sling on a front end loader. The panel was picked up off the ground and the superintendent directed the loader to back and turn with the panel in the air. Appellee Trett was one of two employees who were steadying the panel as it was moved. Appellee Trett was holding on to a steel reinforcing bar on the panel when the front end loader inadvertently backed into the electric lines and contact was made between the raised loader bucket, from which the panel was slung, and one of the energized electric lines. Appellee Trett received a severe electric shock as a result of this contact.

Appellee Trett brought the present action against O.G. & E. alleging that negligence on the part of O.G. & E. had brought about his injuries. The matter was tried to a jury which returned a verdict finding Trett to be 2.5 percent contributarily negligent and finding O.G. & E. to be 34.17 percent negligent and awarding Trett $350,000 in damages.[1] O.G. & E. appealled, arguing that Trett's evidence did not support the verdict and that O.G. & E.'s motion for directed verdict should have been granted and that the trial court erred in not giving two instructions requested by O.G. & E.[2] The Court of Appeals, Oklahoma City Divisions, to which this case was originally assigned, affirmed, finding no error as to the points raised by O.G. & E.

O.G. & E. petitioned for certiorari from this Court, arguing that the Court of Appeals had failed to apply the proper standards of review as to the question of whether the evidence supported the jury verdict and that the Court of Appeals had erroneously dealt with the instruction issues.

In affirming the judgment of the trial court the Court of Appeals stated that it did not find the contractual agreement between O.G. & E. and Dolese to totally insulate O.G. & E. from liability. The court merely stated that the question of liability was properly submitted to the jury. As pointed out by O.G. & E. in its petition for certiorari, the proper standard to be applied when the sufficiency of the evidence to support a jury verdict is raised is whether there is any evidence to support the judgment for the party against whom the motion for directed verdict is made.[3] In ruling on such motion a trial court must consider as true all the evidence and all the inferences reasonably drawn therefrom favorable to the party against whom the motion is made and any conflicting evidence favorable to the movant must be disregarded.[4] In reviewing the trial court's ruling the appellate court must examine the record and make a determination as to whether there is any evidence reasonably tending to support the judgment.[5] Here it does not appear from the Court of Appeals' opinion that such an examination of the record was made. We have therefore previously granted certiorari and now undertake the appropriate review of the questions presented.

On appeal O.G. & E. argues that Trett failed to present any evidence to support a finding that O.G. & E. had breached a duty owed to Trett.[6] Trett argues that a duty on O.G. & E.'s part, and a breach of that

---

1. The remaining 63.33 percent negligence was assessed against Trett's employer Dolese, which was not a party in the trial.

2. The two instructions requested by O.G. & E. but refused by the trial court dealt with: 1) reduction to present value of awards for future damages; and 2) taxability of personal injury awards.

3. *Moses v. Haney*, 725 P.2d 866 (Okla.1986); *Gowins v. Merrell*, 541 P.2d 857 (Okla.1975); *Sadler v. T.J. Hughes Lumber Co., Inc.*, 537 P.2d 454 (Okla.App.1975).

4. *Messler v. Simmons Gun Specialties, Inc.*, 687 P.2d 121 (Okla.1984); *Moses v. Haney*, supra note 3.

5. *Sooner Foods, Inc. v. Eggleston*, 412 P.2d 621 (Okla.1966).

6. The elements of actionable negligence are the existence of a duty on the part of the defendant to protect the plaintiff from injury, a violation or breach of that duty and a resulting injury. *Sloan v. Owen*, 579 P.2d 812 (Okla.1977); *Nicholson v. Tacker*, 512 P.2d 156 (Okla.1973).

duty, was established on two evidentiary points. The first was that O.G. & E.'s lines were allowed to hang at a dangerously low level. The second was that O.G. & E. failed to move the lines in a timely fashion following Dolese's request.

On the issue of the height of O.G. & E.'s lines, Trett introduced the testimony of himself and several of his co-workers to the effect that, in their opinions, the lines were dangerously low. However, from this testimony it was also clear that a front end loader, with its bucket down in a normal position could drive under the lines with clearance. The only evidence of the height of the loader was submitted by O.G. & E. and established that the distance from the ground to the top of the loader's cab was fifteen feet, ten inches. The only specific evidence regarding the height of the O.G. & E. lines was also submitted by O.G. & E. and was to the effect that the O.G. & E. line carrying the charge which was contacted by the front end loader was eighteen feet five inches above the level of the fill added by Dolese at the line's lowest point, and from the top of the fill to the point of contact of the accident was approximately nineteen and one half feet. The testimony of O.G. & E.'s witnesses also established that the line height exceeded National Electrical Safety Code requirements as imposed on O.G. & E. by the Oklahoma Corporation Commission rules on electrical transmission lines by a minimum of three and a half feet prior to Dolese's placement of fill underneath the lines.

On the issue of O.G. & E.'s timeliness of response to the request to move the lines the only evidence submitted by Trett was his and his wife's testimony that on the evening of the day of the accident, two of Trett's supervisors at the Dolese quarry stopped by and told him that they had attempted to have O.G. & E. move the lines earlier but that the O.G. & E. officials had stated that they were "too busy." While the two supervisors from Dolese were subject to examination at trial, there was no attempt to identify the O.G. & E. officials who allegedly made the statements attributed to them.

This Court has previously stated that in the absence of unusual conditions, the maintenance of electrical lines in accordance with the requirements of the Oklahoma Corporation Commission and the National Safety Code will constitute a prima facie showing of lack of negligence.[7] Our cases have further indicated that where compliance with these requirements is established there must be a showing of exceptional circumstances on which to base negligence liability on the part of the electrical carrier.[8]

At trial O.G. & E. raised the provisions of 63 O.S. 1981 §§ 981 through 987, also known as the "six foot rule."[9] Section 981 provides:

No person, firm, corporation or association shall, individually or through an agent or employee and no person as an agent or employee of any person, firm, corporation or association, shall perform or permit any agent or employee to perform any function or activity upon any land, building, highway, or other premises, when it is possible during the performance of such activity for any person or employee engaged in performing work connected with or related to such function or activity to move to or to be placed in a position within six (6) feet of any high voltage overhead electrical line or conductor, or when it is possible for any part of any tool, equipment, machinery or material to be used by any such person or employee to be brought within six (6) feet of any such overhead high voltage line or conductor through any lateral, vertical or swinging motion during

---

7. *Daniel v. Oklahoma Gas & Electric Co.,* 329 P.2d 1060 (Okla.1958); and see *Rudd v. Public Service Co.,* 126 F.Supp. 722 (N.D.Okla.1954).

8. *Daniel,* supra; *Rotramel v. Public Service Co.,* 546 P.2d 1015 (Okla.1976).

9. The constitutionality of the "six-foot rule" statutes has not been raised by the parties as an issue in this appeal and therefore it is unnecessary for this Court to address the question. See *Application of County Courthouse Building Commission of Stephens County,* 403 P.2d 501 (Okla. 1965).

the performance of such function or activity.

Section 986 provides:

When any person, firm or corporation desires to temporarily carry on any function, activity, work or operation in closer proximity to any high-voltage line or conductor than permitted by this act, the person or persons responsible for the work to be done shall promptly notify the operator of the high-voltage conductors of the work to be performed and make appropriate arrangements with the operator of the high-voltage conductors for temporary mechanical barriers, temporary deenergization and grounding of the conductors, or temporarily raising of the conductors before proceeding with any work which would impair the clearances required by this act.

The actual costs incurred by any operator of high-voltage conductors in providing clearances as above set out shall be paid by the persons, firms or corporations requesting the operator of the high-voltage conductors to provide said temporary clearances. Unless and until arrangements satisfactory to the operator of the high-voltage conductors for such payment have been made, such operator shall be under no duty to provide clearances as set out herein.

 As a result of the "six foot rule" provisions it would have been necessary in order to find a duty on the part of O.G. & E. to act to prevent the accident which injured Trett, for O.G. & E. to foresee that Trett and Dolese would act in violation of state law. This point is emphasized by the very nature of the "six foot rule." The rule is positive in its language and forbids action in conflict with its provisions.[10] The Legislature has further made the rule penal in nature. Section 984 provides:

Every person, firm, corporation, association, and every agent or employee of any such person, firm, corporation, or association, who violates any of the provisions of this act, shall be guilty of a misdemeanor, and upon confiction thereof, shall be liable to a fine of not more than Five Hundred Dollars ($500.00), or imprisonment in the county jail for a term not to exceed six (6) months, or both such fine and imprisonment; and in addition thereof, if such violation results in physical or electrical contact with any overhead high voltage line or conductor, the person, firm, corporation or association violating the provisions of this act, shall be liable to the owner or operator of such high voltage line or conductor for all damage to such facilities and for all liability incurred by such owner or operator as a result of any such accidental contact.

 The essence required to establish the existence of a duty is foreseeability of the consequences of the breach of the alleged duty.[11] To establish liability on the part of O.G. & E. in the present case, Trett would necessarily have had to offer evidence to establish that it was foreseeable to O.G. & E. that Dolese would undertake construction activities in violation of state statutes and would also ignore the contractual provisions agreed to between O.G. & E. and Dolese in conformance with those same statutes. Trett failed to offer any evidence to establish this critical point. No evidence was offered to show that O.G. & E. had actual notice, which would have been in conflict with the contractual negotiations, that Dolese had actually begun construction activities in the area of O.G. & E.'s lines prior to the date of the accident. We would find such notice essential to establish exceptional circumstances which would create a duty on the part of O.G. & E. to anticipate that compliance with state law and regulations would be insufficient to fulfill its duty to the public.

Because we find no competent evidence reasonably supportive of the jury's verdict in this case we VACATE the Court of Appeals' opinion rendered herein and REVERSE the judgment of the trial court and REMAND the matter with directions to

---

10. See *Smith v. Southwestern Bell Telephone Co.*, 349 P.2d 646 (Okla.1960).

11. *Nye v. Cox*, 440 P.2d 683 (Okla.1968).

enter judgment for appellant O.G. & E.[12]

OPALA, V.C.J., and SIMMS, KAUGER and SUMMERS, JJ., concur.

HARGRAVE, C.J., and HODGES, DOOLIN and ALMA WILSON, JJ., dissent.

ALMA WILSON, Justice, dissenting:

The opinion of the majority presupposes that that portion of 63 O.S. 1981 § 984 which purports to grant a special right of "indemnity" to owners and operators of high voltage lines is constitutional.[1] It is not.

The relevant portion states:

". . . [I]f such violation [i.e. *coming within six (6) feet* of any high voltage overhead electrical line or conductor] *results in physical* or electrical contact with any overhead high voltage line or conductor, the person, firm, corporation, or association violating the provisions of this act, *shall be liable to the owner or operator* of such high voltage line or conductor for all damage to such facilities and *for all liability incurred* by such owner or operator as a result of any such accidental contact. [Emphasis mine.]

The above portion of 63 O.S. 1981 § 984, *on its face,* violates the Constitution of this State at *Okla. Const.,* Art. 23, § 6. Any action which is granted through an unconstitutional act of the legislative branch is void and without effect from its inception. It is wholly void, and in legal contemplation is as inoperative as if it had never been passed. *State v. Board of County Commissioners of Creek County,* 188 Okl. 184, 107 P.2d 542 (1940).

The above portion of 63 O.S. 1981 § 984 purports to prescribe that any person coming within six (6) feet of any electrical line or conductor *assumes the risk as a matter of law* for all liability incurred by an owner or operator as a result of physical contact. This legislative prescription is plainly in derogation of Article 23, Section 6 of the Oklahoma Constitution:

"The defense of contributory negligence or of *assumption of the risk* shall, in all cases whatsoever, be a *question of fact,* and shall, at all times, *be left to the jury.*"

Thus, such owners and operators cannot constitutionally be relieved of the legal burden to defensively prove, *as a matter of fact,* whether or not an injured/electrocuted person (or his principle) truly assumed the risk of liability for physical contact with high voltage lines or conductors. Our State Constitution at Article 23, Section 6, *supra,* prohibits the legislative preclusion of assumption of the risk as anything other than a question of fact. It cannot be summarily deemed a matter of law. In this respect, the challenged portion of 63 O.S. 1981, § 984 is patently unconstitutional on its face, for it dictates, *as a matter of law,* that any person coming within six (6) feet of an overhead high voltage line or conductor assumes the risk of liability to the owner or operator (and therefore assumes the risk of physical injury or electrocution) regardless of the particular facts and circumstances or the operator/owner's own negligence.

I would hold the heretofore quoted portion of 63 O.S. 1981, § 984 unconstitutional, and therefore without effect.

---

**12.** As a result of the disposition of this matter on the sufficiency of the evidence question, it is unnecessary to address the propositions of error in regard to jury instructions presented by appellant.

**1.** Lack of due process claims are an exception to the general rule that issues not presented to a trial court will not be considered on appeal. *W.O. Pettit v. American National Bank of Austin,* 649 P.2d 525 (Okla.1982). In the present case, the statutory preclusion of the factual determination of assumption of risk (a jury question) is tantamount to a denial of due process. Moreover, the Supreme Court may review a matter not presented in the lower court if a question of public policy or public interest is involved. *In re Initiative Petition No. 10 of Oklahoma City,* 186 Okl. 497, 98 P.2d 896 (1940). Questions affecting a substantial right may be considered by an appellate court of review. *Stem v. Adams,* 30 Okl. 101, 118 P. 382 (Okla.1911).