Brenda J. SHELLEY, Personal Representative of the Estate of Tony Blaine Murphy, Deceased; Brenda J. Shelley, individually; Johnny B. Devlin; Blaine Devlin; Barbara Devlin; and Darlene Devlin, Appellants,

v.

KIWASH ELECTRIC COOPERATIVE, INC., an Oklahoma corporation, Appellee.

No. 80635.

Supreme Court of Oklahoma.

March 26, 1996.

---

Terry Stokes, Fuller, Tubb & Pomeroy, Oklahoma City, for Appellant Brenda J. Shelley, Individually and as personal representative of the estate of Tony Blaine Murphy.

G. Neal Rogers, Lawrence, Ellis & Harmon, Oklahoma City, for Appellants Johnny B. Devlin, Blaine Devlin, Barbara Devlin, and Darlene Devlin.

Robert S. Lafferrandre, D. Lynn Babb, Pierce, Couch, Hendrickson, Baysinger & Green, Oklahoma City, for Appellee.

LAVENDER, Justice.

In this personal injury action, we are asked to decide whether there existed a controverted issue of material fact precluding the entry of summary judgment in favor of appellee, Kiwash Electric Cooperative, Inc. We hold there was no question of fact regarding the presence of exceptional circumstances which would have created a duty on Kiwash to anticipate that compliance with state law would be insufficient to fulfill its duty to the public.

## FACTS AND PROCEDURAL HISTORY

Johnny and Blaine Devlin, were employed as ranch hands on the 4 J Ranch. On June 13, 1986, with the assistance of Tony Blaine Murphy, a minor, they attempted to load grain into a storage bin using a portable auger. The storage bin was adjacent to two electrical lines owned and maintained by appellee, Kiwash Electric Cooperative, Inc. After transporting the auger in a lowered position under Kiwash's electrical lines from an implement park to the grain bin, appellants found it necessary to move the auger from the west side of the bin to the south side to obtain better access to the bin opening. While pivoting the auger in a raised position, appellants ran the elevated end of the auger into appellee's electrical lines at a point on the lines 50 feet west of the center line of the bin. As a result, Tony Blaine Murphy was killed and Johnny Devlin and Blaine Devlin suffered burns.

The personal representative of Tony Blaine Murphy, Johnny and Blaine Devlin, and their spouses (appellants) brought this action against appellee, Kiwash Electric Cooperative, Inc. (Kiwash). Appellants alleged that Kiwash failed to maintain its lines in a safe manner and failed to warn appellants of the danger created by the electrical lines in close proximity to the grain bin. Thereafter, Kiwash moved for summary judgment. The trial court granted the motion, finding that appellants' violation of the "six-foot" rule [1] entitled Kiwash to judgment as a matter of law.

The court of appeals reversed, finding an unresolved factual issue remained precluding summary judgment. Specifically, the court held that a question of material fact existed regarding the presence of unusual circumstances which would create a duty on the part of Kiwash to anticipate that compliance with state law and regulations would be insufficient to satisfy its duty to the public. We granted certiorari to consider whether a question of fact remains regarding the presence of "exceptional circumstances" that would indicate Kiwash failed to exercise the high degree of care required of it.

## ANALYSIS

■ Oklahoma law has consistently provided that a company transporting and selling electricity for profit "owes a greater degree of care and precaution in its use than that of property of a less dangerous character." *Daniel v. Oklahoma Gas & Electric Co.*, 329 P.2d 1060, 1062 (Okla.1958). However, electrical providers are not held to be an "insurer against unforeseen and unavoidable accidents." *Id.* This Court has previously held that "in the absence of unusual conditions, the maintenance of electrical lines in accordance with the requirements of the Oklahoma Corporation Commission and the [NESC] will constitute a prima facie showing of lack of negligence." *Trett v. Oklahoma Gas & Electric Co.*, 775 P.2d 275, 278 (Okla. 1989). Further, where NESC compliance is established, we have required plaintiffs to

---

1. The six-foot rule, 63 O.S.1991, § 981 et seq., prohibits any activity within six feet of a high voltage electrical line or conductor.

prove exceptional circumstances on which to base a claim of negligence on an electrical carrier. *Id.* See also *Juvenal v. Okeene Public Schools,* 878 P.2d 1026, 1030 (Okla. 1994).

In this case, the trial court sustained Kiwash's motion for summary judgment based on a determination that appellants had violated the "six foot" rule, found in 63 O.S.1991, §§ 981–87. Finding this rationale "erroneous," [2] the court of appeals considered whether summary judgment could be upheld based on Kiwash's contention it had satisfied its common law duty of care and, under the law of Oklahoma, owed no further duty to appellants.

■ Kiwash maintains that the uncontroverted facts establish it complied with the National Electric Safety Code (NESC) in installing and maintaining the electrical lines on the 4 J Ranch. Kiwash further contends that such compliance is "prima facie evidence of the absence of negligence." *Daniel,* 329 P.2d at 1062. Relying on this Court's analysis in *Trett,* Kiwash argues it owes no further duty to appellants unless they establish "exceptional circumstances" that would justify a greater degree of care than required by the NESC or the Oklahoma Corporation Commission.[3]

Although the court of appeals agreed that the facts established Kiwash had complied with NESC requirements, the court found that unresolved issues of fact existed regarding the presence of unusual circumstances which would impose an increased duty of care on Kiwash. This conclusion was based on evidence that for 14 years, Kiwash employees routinely visited the 4 J Ranch to read and set the owner's meter. The evidence showed that these visits required Kiwash employees to regularly pass

the accident site where the allegedly hazardous condition existed. The court also noted that Kiwash employees acknowledged that the proximity of the electrical lines to the grain bin created a "hazardous condition." The court of appeals found this evidence sufficient to raise a question of ·fact regarding whether Kiwash became aware of an obviously hazardous condition as required by *Trett.* We disagree.

In *Trett,* an injured worker sued a utility company for injuries sustained when machinery he was working with came in contact with overhead electrical lines owned by the utility. The facts showed that the utility had agreed with the plaintiff's employer to relocate certain electrical lines to accommodate the employer's construction plans. However, the employer began the work before the date the agreement required the utility to move its lines. *Trett,* 775 P.2d at 276–77. Therein, this Court held:

> To establish liability on the part of O.G. & E. in the present case, Trett would necessarily have had to offer evidence to establish that it was foreseeable that [the employer] would undertake construction activities in violation of state statutes and would also ignore the contractual provisions agreed to between O.G. & E. and [the employer] in conformance with those same statutes. Trett failed to offer any evidence to establish this critical point. No evidence was offered to show that O.G. & E. had actual notice that ... [the employer] had actually begun construction activities in the area of O.G. & E.'s lines prior to the date of the accident. We would find such notice essential to establish exceptional circumstances which would create a duty on the part of O.G. & E. to anticipate that compliance with state

---

2. The Court of Appeals conclusion regarding the "six-foot" rule appears to be correct in light of our decision in *Kimery v. Public Service Co.,* 622 P.2d 1066 (Okla.1980). Therein we stated:

> The legislation in question does not by its terms confer any immunity from tort liability upon electric utilities; it does not operate to the disadvantage of some particular class; nor is it claimed to impinge upon a fundamental right explicitly or implicitly protected by the state or federal constitution. The law applies to all persons who may work in the vicinity of

high-voltage electrical conductors and imposes upon them a burden of care for the purpose of promoting public safety and welfare. An electric utility must continue to exercise a high degree of care in building, operating and maintaining its equipment.

*Id.* at 1070; *see also, Rotramel v. Public Service Co.,* 546 P.2d 1015, 1017 (Okla.1975).

3. *Trett,* 775 P.2d at 278; *see also Rotramel,* 546 P.2d at 1018; *Daniel,* 329 P.2d at 1062.

law and regulations would be insufficient to fulfill its duty to the public. *Id.* at 279.

While we stated that under the facts in *Trett,* the electric company must have actual notice of the exceptional circumstances which would give rise to a duty, we did not hold that in every action for injuries from contacting a power line actual notice of exceptional circumstances will be required. The electric company in that case was made aware of the fact that construction was going on under its electric lines and that someone might be injured unless the lines were removed or raised. The company then entered into an agreement with the contractor to perform the necessary work and it was also agreed that the work raising the lines would be delayed a few days. Instead of delaying the work however the contractors' employees continued working—it was this exceptional circumstance of which the electric company was entitled to actual notice before it could be held liable. *See Taylor v. Payne,* 872 P.2d 953 (Okla.App.1994).

Although it is not required that Kiwash have actual notice, it is required that Kiwash be aware of circumstances in the area of the grain bin that would make it foreseeable that someone would be injured when a grain auger being used to load grain into the bin would come in contact with the electric lines. We disagree with the court of appeals that mere knowledge of the proximity of its lines to the grain bin was sufficient to put Kiwash on notice that what happened here would occur unless Kiwash did something about the location of its line.

In the instant case, the evidence does indicate that *after* the accident, appellee's employees stated that the proximity of the electrical lines to the grain bin created a hazardous condition.[4] However, even if this is true, the accident did not occur at that location. The facts show that appellants ran the auger into the electrical lines at a point 50 feet west of the centerline of the bin. No evidence was offered to show that placement of the bin 50 feet in all directions from

Kiwash's lines would have created a hazardous condition. And without such evidence, Kiwash cannot be said to have reasonably foreseen that routine work done around the grain bin would be dangerous due to the location of its lines. Moreover, to require Kiwash to anticipate that someone loading the grain bin might transport the auger or maneuver it fifty feet from the bin in a raised position is to require Kiwash to guard against possibilities rather than probabilities.

The ruling in *Taylor v. Payne,* 872 P.2d 953 (Okla.Ct.App.1994) is distinguishable from the facts in the present case. In *Taylor,* the appellate court found that an electrical cooperative could have foreseen that equipment on the plaintiff's property could be operated in a manner that would violate the "six foot rule." There was evidence in *Taylor* that "various [cooperative] employees had gone on inspection and maintenance tours to inspect the power lines at Payne's property and that those employees would 'have seen that there are cranes and dump trucks and other instrumentalities that can go up high enough to come in contact with those lines.'" *Id.* at 955. The court found this evidence, together with evidence indicating that had the lines been higher the accident would not have happened, sufficient to establish exceptional circumstances and allow the jury to find some liability on the part of the electrical cooperative. While we may agree with the result reached in *Taylor,* we find it is not helpful here.

In the instant case, no evidence was presented that Kiwash's employees, while reading and setting the property owner's meter, observed the auger in operation at the bin or witnessed it being transported in a manner likely to contact the electrical lines. Moreover, Kiwash was under no legal duty to inspect the property owner's lines and equipment for safety purposes. As the court of appeals in *Taylor* noted section 214 of the 1984 edition of the National Electric Safety Code provides in part that "[l]ines and equipment shall be inspected at such intervals as

---

4. The evidence indicates that one side of the grain bin was only 4 to 5 feet from appellee's electrical lines. It was this location that appel-

lee's employer believed created a hazardous condition.

experience has shown to be necessary." However, section 214 does not impose on an electric company an obligation to either monitor the activities of third parties or to discover dangerous conditions created by them (third parties) near electrical lines.

Summary judgment is proper only when the pleadings, affidavits, depositions, admissions, or other evidentiary materials establish that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *Brown v. Oklahoma State Bank & Trust Co.,* 860 P.2d 230, 233 (Okla.1993). In reviewing a motion for summary judgment, all inferences and conclusions drawn from the evidence must be viewed in a light most favorable to the party opposing the motion for summary judgment. *Davis v. Leitner,* 782 P.2d 924, 926 (Okla.1989). Because Kiwash was under no legal duty to inspect the lines and no evidence was presented which would indicate that Kiwash employees observed any activities that would put Kiwash on notice of unusual circumstances, we find the court of appeals erred in concluding that a question of fact remains regarding the existence of exceptional circumstances.

Absent any showing of exceptional circumstances, we find that Kiwash's motion for summary judgment should be sustained. Although the trial court granted summary judgment based on its erroneous conclusion that appellant's violation of the "six-foot rule" entitled Kiwash to judgment as a matter of law, the result was correct. Where a trial court reaches a correct result although based upon incorrect reasoning, its decision will not be reversed on appeal. *G.A. Mosites Co. v. Aetna Casualty and Surety Co.,* 545 P.2d 746, 752 (Okla.1976); *Russell v. Flanagan,* 544 P.2d 510, 511 (Okla.1975).

## CONCLUSION

For the reasons discussed herein, we VACATE the decision of the Court of Appeals. We AFFIRM the judgment of the trial court granting Kiwash's motion for summary judgment.

HODGES, SIMMS, HARGRAVE, OPALA and SUMMERS, JJ., concur.

ALMA WILSON, C.J., and KAUGER, V.C.J., dissent.

WATT, J., disqualified.

ALMA WILSON, Chief Justice, with whom KAUGER, V.C.J., joins, dissenting:

*Daniel v. Oklahoma Gas & Elec. Co.,* 329 P.2d 1060, 1062 (Okla.1958) observes that an electric company owes the public the "highest duty" and "was required to exercise caution adequate to the peril of the destructive agency involved." The case further elaborates that the defendant therein had fulfilled its duty

"unless by reason of the location of the line on the property, taking into consideration the location of the building thereon and whether or not the probabilities were such that a person rightfully thereon might come in contact with the uninsulated wire required a standard of care beyond the minimum set forth in the code."

*Daniel,* 329 P.2d at 1062. I would revisit *Trett v. Oklahoma Gas & Elec. Co.,* 775 P.2d 275 (Okla.1989) by setting a standard of care for electric transmission companies in keeping with the hazard involved.