2001 OK CIV APP 39

Sharylin **FULLER** and C.A. Fuller, **Plaintiffs/Appellants,**

v.

Steven **PACHECO** and **Vickrey Heating and Air Conditioning, Inc.,** an Oklahoma Corporation, **Defendants/Appellees,**

and

**State Farm Mutual Automobile Insurance Company, Intervenor.**

No. 93,222.

Court of Civil Appeals of Oklahoma, Division No. 2.

Jan. 16, 2001.

Certiorari Denied March 13, 2001.

Mark D. Lyons, Kevin Danielson, Lyons & Clark, Tulsa, OK, for Plaintiffs/Appellants.

William F. Smith, Gladd, Smith, Harris & Rounds, P.A., P.A., Tulsa, OK, for Defendant/Appellee Steven Pacheco.

Anthony P. Sutton, Herrold, Herrold, Sutton & Davis, Tulsa, OK, for Defendant/Appellee Vickrey Heating and Air Conditioning, Inc.

Gregory D. Nellis, Galen L. Brittingham, Atkinson, Haskins, Nellis, Boudreaux, Holeman, Phipps & Brittingham, Tulsa, OK, for Intervenor State Farm Mutual Automobile Insurance Co.

## OPINION

COLBERT, J.

¶ 1 Sharylin and C.A. Fuller appeal the trial court's orders denying their motions for judgment notwithstanding the verdict and a new trial, and awarding attorney fees and costs to Appellees, Steven Pacheco and Vickrey Heating and Air Conditioning, Inc. There are three issues on appeal in this tort action—whether the trial court erred in: (1) denying the Fullers' motion for judgment notwithstanding the verdict; (2) denying the Fullers' motion for a new trial; and (3) setting the amount of the attorney fees and costs award. We conclude that, while the trial court did not err in denying the Fullers' post-trial motions, the court erred in setting the amount of attorney fees and costs. We, therefore, affirm the court's ruling on the post-trial motions but modify its award of attorney fees and costs.

## BACKGROUND

¶ 2 This case arose out of a motor vehicle accident on an icy road. Pacheco, who was driving a van, struck a truck driven by Mrs. Fuller and she suffered injuries as a result. The Fullers sued Pacheco for damages and loss of consortium and sued Vickrey under the theory of vicarious liability.

¶ 3 The case was tried before a jury. At the close of all the evidence, the Fullers moved for a directed verdict, which the court denied. The jury rendered a general verdict in favor of Pacheco and Vickrey. The Full-

ers subsequently filed motions for judgment notwithstanding the verdict and a new trial. The trial court denied these motions and the Fullers appealed. After the trial court awarded the Appellees a combined total of $49,181 in attorney fees and costs, the Fullers amended their petition in error, asserting that the trial court also erred in awarding attorney fees and costs against them.

## DISCUSSION

¶4 The accident occurred about 8:00 a.m. on January 6, 1995, on a north-south, two-lane road. The road, which had no shoulders, was icy due to an overnight sleet storm. Both Mrs. Fuller and Pacheco testified they were aware of the icy conditions before they got on the road.

¶5 Mrs. Fuller left home driving south in the west lane of the road. She testified that she drove approximately twenty or twenty-five miles-per-hour. The normal speed limit, according to the state trooper who arrived on the scene after the accident, was thirty-five to forty-five miles-per-hour.

¶6 As she approached a hill, Mrs. Fuller saw an abandoned truck in the ditch on the east side of the road, facing south. She assumed the truck's driver had unsuccessfully attempted to go up the hill and, because her truck was lighter in weight than the truck in the ditch, she assumed she also could not make it up the hill. Mrs. Fuller stopped her truck in the road, in her own lane, approximately forty-five feet behind the abandoned truck. She testified that she pulled as far over to the right as she could, because she did not want to be in the way of traffic. She then sat there, trying to decide what to do, but did not turn on her emergency lights or headlights.

¶7 The abandoned vehicle belonged to Learl Rice, who had been traveling northbound in the east lane of the road. His truck slid off the road and into the ditch around 6:00 a.m. Although Rice had been northbound, his truck was facing south when he slid off the road and he estimated that one-quarter of it was sticking out into the road. The state trooper, however, testified that Rice's truck blocked close to one-half of the northbound lane, obstructing northbound traffic.

¶8 For persons traveling northbound, the road curved just before reaching the crest of the hill. Pacheco was heading north in the east lane of the road. When he crested the hill, he saw the abandoned truck facing him and partially in the east lane and Mrs. Fuller's truck in the west lane, somewhat behind the abandoned truck at the bottom of the hill.

¶9 Pacheco testified that he was driving only fifteen to twenty miles-per-hour and was still in control of his van when he got to the crest of the hill. However, he also testified that, since the hill was a solid sheet of ice, he did not apply his brakes when he saw both vehicles because he would have lost control of his van. Not having much time to contemplate his actions, Pacheco decided to try to go between the abandoned truck and Mrs. Fuller's truck. However, his van clipped the abandoned truck, causing him to spin into Mrs. Fuller's truck. He testified:

Q. Mr. Pacheco, tell us why you could not miss that vehicle two hundred and seventy-six feet away?

A. Because, like I said, when I seen Mrs. Fuller's vehicle and the vehicle in the road, I tried to steer in between them. When I did, my back bumper clipped Mr. Rice's vehicle.

Q. Okay.

Is it fair to say, Mr. Pacheco, that according to your statements that you tried to steer between them that you just didn't time it properly or you didn't judge correctly; is that fair?

A. I said that it was a split second decision. All I thought I could do was try to get in between the two vehicles.

Pacheco also testified that the hill was somewhat deceptive, because it was impossible to see down the hill until he had actually started down the hill. Moreover, because both trucks were facing him when he crested the hill, he thought both were moving toward him.

¶10 According to the state trooper, the force of the impact knocked Mrs. Fuller's truck backward approximately forty feet. She contends on appeal that the trial court

erred in denying her motion for judgment notwithstanding the verdict, in denying her motion for new trial, and in awarding attorney fees and costs to Pacheco and Vickrey.

I. The Trial Court Did Not Err in Denying the Motion for Judgment Notwithstanding the Verdict.

¶ 11 Whether the Fullers' motion for judgment notwithstanding the verdict should have been sustained depends upon whether their motion for a directed verdict, made at the close of all the evidence, should have been granted. *McInturff v. Oklahoma Natural Gas Transmission Co.*, 1970 OK 169, ¶ 9, 475 P.2d 160, 162. Our task is to "examine the record and make a determination as to whether there is any evidence reasonably tending to support the judgment." *Trett v. Oklahoma Gas & Elec. Co.*, 1989 OK 54, ¶ 6, 775 P.2d 275, 277. Thus, the resolution of this issue depends upon whether the jury could have found the evidence sufficient to establish each element of the claim of negligence.

¶ 12 The elements of negligence are: (1) the existence of a duty on the part of the defendant to protect the plaintiff from injury; (2) breach of that duty; and (3) injury proximately resulting therefrom. *Dirickson v. Mings*, 1996 OK 2, ¶ 7, 910 P.2d 1015, 1018. Because there is no dispute on appeal about Mrs. Fuller's injuries, we consider only the first and second elements.

¶ 13 The existence of a duty is the threshold question of law for the court to decide in any negligence case. *Wofford v. Eastern State Hosp.*, 1990 OK 77, ¶ 8, 795 P.2d 516, 518. The most important consideration in the determination of whether a duty exists is foreseeability; the general rule is that a "defendant owes a duty of care to all persons who are foreseeably endangered by his conduct with respect to all risks which make the conduct unreasonably dangerous." *Id.* at ¶ 11, 795 P.2d at 519 (quoting *Tarasoff v. Regents of Univ. of Cal.*, 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334, 342 (1976).) Foreseeability establishes a "zone of risk," that is, whether the conduct "creates a generalized and foreseeable risk of harming others." *Delbrel v. Doenges Bros. Ford, Inc.*,

1996 OK 36, ¶ 8, 913 P.2d 1318, 1321; *McCain v. Florida Power Corp.*, 593 So.2d 500, 502 (Fla.1992). "Where a defendant's conduct creates a foreseeable zone of risk, the law generally will recognize a duty placed upon defendant either to lessen the risk or see that sufficient precautions are taken to protect others from the harm that the risk poses." *McCain*, 593 So.2d at 503.

¶ 14 Finally, the driver of a motor vehicle has a duty to "use that degree of care which is reasonable and prudent *under the circumstances.*" *Dirickson*, 1996 OK 2, ¶ 7, 910 P.2d at 1018 (emphasis added). Pacheco had a duty to use reasonable care under the circumstances in operating his vehicle to avoid creating a zone of risk which would expose Mrs. Fuller to harm. Our next inquiry, then, is whether Pacheco breached that duty.

¶ 15 To determine whether Pacheco breached his duty to Mrs. Fuller, we must return to the facts. The hill where the accident occurred was completely iced over. Pacheco could not see the two trucks until he actually crested the hill. He believed both trucks were moving towards him. Once he crested the hill, Pacheco had only two options. The first was to apply his brakes. However, as Pacheco testified, applying the brakes would most likely have caused him to completely lose control of his van, creating a potentially greater hazard. Indeed, the owner of the abandoned truck testified that he had "tapped" his breaks when he came to the crest of the hill, started sliding, and lost control of his truck. Pacheco chose the second option, to attempt to go between the two trucks.

¶ 16 Pacheco was forced to make his decision in a matter of seconds. Even if he misjudged the distance he had to go around the abandoned truck, the evidence does not show that he acted carelessly in so doing. The jury could have reasonably concluded that Pacheco made a reasonable choice and that the weather conditions, not Pacheco's conduct, created the zone of risk. We conclude there was evidence upon which the jury could have reasonably determined that Pa-

checo did not breach the duty of care he owed to Mrs. Fuller.

¶ 17 The Fullers argue that Pacheco was negligent because the icy road conditions were foreseeable, relying on case law from other jurisdictions. One of those cases is *Calvetti v. Seipp*, 37 Ill.2d 596, 227 N.E.2d 758 (1967), where an Illinois appellate court reversed a jury verdict in favor of the defendant in a case similar to this one. The court concluded that the defendant offered no evidence that the accident occurred without negligence on her part and stated:

We think defendant ought to have shown that the danger could not have been anticipated, that her speed was reasonable in view of the weather and road conditions and that her turn to the right did not, as it would normally do, cause the rear end to slide in the opposite direction.

*Id.* at 760.

¶ 18 Unlike the defendant in *Calvetti*, Pacheco put forth evidence tending to show that the accident was caused by something other than negligence on his part and that the accident could not have been anticipated. He testified that he was traveling only fifteen to twenty miles-per-hour when he crested the hill and was suddenly confronted with two vehicles, both of which appeared to be traveling toward him. Because the first vehicle partially obstructed his lane, Pacheco had no choice but to try to go around it.

¶ 19 The Fullers make a rather broad argument with which we disagree. The other cases cited by the Fullers are similarly unpersuasive. *See Kyrouac v. Brockman*, 120 Ill.App.3d 249, 75 Ill.Dec. 632, 457 N.E.2d 1074 (1983), and *Kissinger v. United Parcel Serv. Co.*, 8 Neb.App. 260, 592 N.W.2d 169 (1999). It is the foreseeability of the accident itself, not the foreseeability of ice on the road, which is decisive.

¶ 20 There is evidence to support the jury's verdict that Pacheco was not negligent. Therefore, the Fullers were not entitled to judgment as a matter of law, and the trial court did not err in denying the Fullers' motion for judgment notwithstanding the verdict.

## II. The Trial Court Did Not Err in Denying the Motion for a New Trial.

¶ 21 A motion for a new trial is "directed to the sound discretion of the trial court, and will not be disturbed on appeal in the absence of an abuse of that discretion." *Nu–Pro, Inc. v. G.L. Bartlett & Co.*, 1977 OK 226, ¶ 5, 575 P.2d 620, 622. An abuse of discretion involves a clearly erroneous conclusion, against the logic and effect of the facts presented. *See Oklahoma Turnpike Auth. v. Horn*, 1993 OK 123, ¶ 6, 861 P.2d 304, 306.

¶ 22 We find no abuse of discretion on the part of the trial court in denying the motion for a new trial. Unless there is a complete absence of probative facts, the question of negligence is for the jury to decide. *See Atchison, Topeka & Santa Fe Ry. v. Marzuola*, 1966 OK 169, 418 P.2d 625. In this case, the trial court submitted the issue of negligence to the jury. From our review of the record, we can only conclude that the jury must have decided that the breach-of-duty element of negligence was not satisfied. Thus, the trial court's judgment was consistent with the facts presented in the case, and the court correctly refrained from substituting its opinion for that of the jury.

## III. The Trial Court Did Err in Setting the Amount of Attorney Fees and Costs.

¶ 23 Finally, the Fullers contend the trial court erred in awarding Pacheco and Vickrey a combined total of $49,181 in attorney fees and costs.[1] "An award of attorney fees is within the discretion of the trial court and will not be disturbed absent abuse of that discretion." *Green Bay Packaging, Inc. v. Preferred Packaging, Inc.*, 1996 OK 121, ¶ 32, 932 P.2d 1091, 1097.

### A. Attorney Fees

¶ 24 Pacheco was awarded $15,841, which included $13,919 in attorney fees. Vickrey was awarded $33,340, which included $22,530

---

1. We have rounded the numbers for the purposes of clarity in the discussion.

in attorney fees. The trial court relied upon 12 O.S. Supp.1998 § 1101.1,[2] which provides for an award of attorney fees when the plaintiff has rejected a valid offer of judgment and then loses at trial or recovers less than the amount of the offer of judgment.

¶ 25 The trial court correctly concluded that Pacheco and Vickrey were entitled to an award of attorney fees. In the pretrial order, the Fullers sought over $1,000,000 in damages. On July 30, 1998, the date of the pretrial conference, Pacheco and Vickrey collectively offered $75,000 as an offer to confess judgment. The Fullers did not respond within the ten days provided by section 1101.1 and, thus, effectively rejected the offer of judgment. The trial began on February 3, 1999, and ended on February 11, 1999, with the jury rendering a verdict against the Fullers and in favor of Pacheco and Vickrey. Thus, Pacheco and Vickrey were entitled to recover attorney fees under section 1101.1.

¶ 26 We disagree, however, with the amount of the attorney fees awarded by the trial court. Section 1101.1 expressly states that the defendant is only entitled to fees incurred from the date of the offer to confess judgment *until the date of the verdict*. Here, Pacheco sought fees incurred from February 12, 1999, through March 8, 1999, totaling $285. Vickrey requested attorney fees incurred from February 12, 1999, through March 10, 1999, totaling $850. Since these post-verdict attorney fees are not recoverable under section 1101.1, Pacheco's award is reduced to $13,634, and Vickrey's award is reduced to $21,680.

¶ 27 We note that section 1101.1 also imposes a reasonableness limitation upon the award of attorney fees. However, at the evidentiary hearing conducted on October 7, 1999, the Fullers' attorney stipulated to the number of hours and the hourly rate charged by Pacheco's and Vickrey's attorneys. Although the Fullers' attorney argued that no award should be made, he did not dispute the amount requested. Thus, we conclude that, as modified, the award of attorney fees satisfies the reasonableness requirement of section 1101.1.

**B. Costs**

¶ 28 We must next determine whether costs were properly awarded. The trial court awarded Pacheco $1,922 in costs for deposition fees, copies of depositions, and an exhibit to be used at trial. The court made this award pursuant to 12 O.S. Supp.2000 § 942, which itemizes the costs for which a prevailing party can recover, and section 1101.1. We find that the costs for deposition fees and copies were properly awarded pursuant to section 942(6), which reads:

> A judge of any court of this state may award the following as costs:
>
> * * *
>
> 6. Reasonable expenses for taking and transcribing deposition testimony, for furnishing copies to the witness and opposing counsel, and for recording deposition testimony on videotape, but not to exceed One Hundred Dollars ($100.00) per two-hour videotape. . . .

*See also Atchley v. Hewes*, 1998 OK CIV APP 143, ¶¶ 7–8, 965 P.2d 1012, 1014 (deposition fees and copying costs may be awarded under section 942(6)).

¶ 29 Included in the cost award for Pacheco was a fee of $31 for an enlarged copy to be used as an exhibit at trial. Since this type of expense is not specifically listed in section 942, we must determine whether it is recoverable under section 1101.1, which provides for the recovery of reasonable litigation costs. However, neither section 1101.1 nor Oklahoma case law has defined what "reasonable litigation costs" entails. We, therefore, must examine the ways in which federal authorities have defined litigation costs.

¶ 30 Title 26 of the United States Internal Revenue Code defines reasonable litigation costs as: (1) reasonable court costs; (2) the reasonable expenses of expert witnesses; (3) "the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case"; and (4) reasonable attorney fees. 26 U.S.C.A. § 7430(c)(1) (West Supp.2000). Similarly, a federal court recently interpreted the phrase

**2.** Subsequently amended by 1999 Okla. Sess. Laws, ch. 293, § 12 (effective Nov. 1, 1999).

"reasonable litigation costs" to include such things as "copying, expert witnesses, transcripts, deposition fees, on-line research, travel and meals, postage and delivery services, subpoena service, and witness fees and telephone." *See Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 151 (E.D.Pa.2000). We conclude that, pursuant to the foregoing definitions of reasonable litigation costs, Pacheco's cost for the exhibit is recoverable as a cost of litigation under section 1101.1.

¶ 31 We now turn to the cost award for Vickrey. Vickrey was awarded $10,810 in costs for deposition fees, video deposition fees, and expert witness fees. The award for deposition fees and video deposition fees was also made pursuant to section 942. As we previously discussed, section 942 permits recovery for deposition fees. Section 942 also allows recovery for video deposition fees. Moreover, costs for deposition fees are recoverable under section 1101.1. Thus, these costs were properly awarded.

¶ 32 The award for expert witness fees of $6,680 raised the most contention at the hearing. The trial court awarded expert witness fees pursuant to section 942 and 12 O.S. Supp.1998 § 3226.[3] Another division of this court addressed the issue of expert witness fees under these statutory provisions in *Atchley*, 1998 OK CIV APP 143, 965 P.2d 1012. In *Atchley*, the court explained that section 942(3) mandates the allowance of "statutory witness fees." *Id.* at ¶ 10, 965 P.2d at 1015. The court further explained that, inasmuch as fees paid to expert witnesses under section 3226(B)(3)(c)(1) are required by statute to be paid, those fees are recoverable as costs. *Id.*

¶ 33 In *McCoy v. Black*, 1997 OK CIV APP 78, 949 P.2d 689, this court analyzed the circumstances under which expert witness fees are actually required by section 3226(B)(3)(c)(1). Relying on federal case law interpreting Federal Rule of Civil Procedure 26(b), upon which section 3226(B)(3)(c)(1) is based, the court established three guidelines by which to determine whether expert witness fees must be paid. First, where a party "specially employs a physician or other expert for the express purpose" of having that expert testify at trial and give his/her opinion based on the expert's particular realm of authority and review of relevant materials, the witness is an expert, and expert witness fees must be paid. *Id.* at ¶ 7, 949 P.2d at 692. Second, where a treating physician testifies only to the care and treatment of the patient, such witness is not an expert but a "fact" witness. *Id.* at ¶ 8, 949 P.2d at 692. Third, where a treating physician is called upon to express an opinion on matters aside from facts derived from examination and treatment of a party, the physician is an expert for purposes of 3226(B)(3)(c)(1). *Id.* at ¶ 9, 949 P.2d at 693.

¶ 34 Here, Vickrey was awarded expert witness fees for deposing eight experts, all but one of which were the Fullers'. This is significant because in *Dulan v. Johnston*, 1984 OK 44, ¶¶ 23–24, 687 P.2d 1045, 1048, the supreme court explained that section 3226(B)(3)(c)(1) (which was section 3203(B)(3)(c)(1) at the time) is not applicable to a situation where a party is deposing its own witness. Expert witness fees must only be paid where a party seeks discovery from an adverse party's expert witness. The record here reveals that the first expert witness listed by Vickrey, Dr. Powers, is Vickrey's own expert. Section 3226(B)(3)(c)(1) does not apply to the costs for this expert. However, as the fees for this expert were accrued during the time frame of section 1101.1, when the offer to confess judgment was outstanding, Vickrey was entitled to an award of costs for this expert witness pursuant to that statute.

¶ 35 Vickrey also submitted invoices for seven other expert witnesses, who were deposed before the offer to confess judgment was made. Moreover, although some of the witnesses testified at trial, there is nothing in the record which indicates that these witnesses were indeed experts and that the invoices which Vickrey submitted were for the witnesses' time in preparing for and testifying at trial. Vickrey had the burden of causing a record to be prepared which demonstrated its entitlement to these costs. We

**3.** Subsequently amended by 1999 Okla. Sess. Laws, ch. 293, § 21 (effective Nov. 1, 1999).

will not assume facts not in the record. *Atchley,* 1998 OK CIV APP 143, ¶ 2, 965 P.2d at 1013. Therefore, we conclude that, with the exception for Dr. Powers, the trial court abused its discretion in awarding Vickrey expert witness fees. The cost portion of Vickrey's award is hereby reduced to $7,130.

¶ 36 In summary, the trial court was correct in awarding attorney fees pursuant to section 1101.1, and, as modified above, we affirm this portion of the award. However, with one exception, the trial court erred in awarding expert witness fees to Vickrey. Thus, we reduce the combined total award of attorney fees and costs from $49,181 to $44,366.

## CONCLUSION

¶ 37 The trial court did not err in denying the Fullers' post-trial motions. However, the trial court abused its discretion in awarding Pacheco and Vickrey attorney fees accrued after the verdict and in awarding expert witness fees to Vickrey for deposing witnesses it failed to establish as experts. We, therefore, affirm the trial court's ruling on the post-trial motions and modify the award for attorney fees and costs.

¶ 38 AFFIRMED AS MODIFIED.

¶ 39 TAYLOR, J., concurs, and RAPP, P.J., dissents.

RAPP, P.J., dissenting

¶ 1 I am required to dissent. Pacheco admitted that he had control of his vehicle when topping the hill and beginning descent. He had the last clear chance to avoid the accident and, by his negligent driving, caused the impact with the parked vehicle.