2007 OK CIV APP 11

**Lubertha M. NASH and Elijah Nash, Plaintiffs/Appellants,**

v.

**GENERAL MOTORS CORPORATION, Defendant/Appellee.**

No. 103,559.

Court of Civil Appeals of Oklahoma, Division No. 1.

Dec. 22, 2006.

Kenneth Butler, Okmulgee, OK, and Steven D. Brumley, Duncanville, TX, for Plaintiffs/Appellants.

Michael F. Smith, Mary Quinn–Cooper, William S. Leach, Eldridge Cooper Steichen & Leach, P.L.L.C., Tulsa, OK, for Defendant/Appellee.

ROBERT DICK BELL, Presiding Judge.

¶ 1 In this manufacturers' products liability action, Plaintiffs/Appellants, LuBertha · M. Nash and Elijah Nash, appeal the trial court's summary judgment in favor of Defendant/Appellee, General Motors Corporation (GM). We hold Defendant was entitled to judgment on Plaintiffs' claims.

¶ 2 Plaintiffs purchased a 1999 GMC Sierra pickup from GM. On January 20, 2000, Ms. Nash was injured in a two-vehicle collision when the driver of another vehicle ran a stop sign and collided with Ms. Nash's GMC pickup. A year after the collision, Plaintiffs received two recall notices from GM. One notice recalled the vehicle to remedy a potential defect in the seat belt assembly. The notice warned: "If a vehicle with these noncompliant safety belts were in an accident, increased occupant injury could occur." The other notice was for potential defects in the vehicle's braking system.

¶ 3 In 2002, Plaintiffs filed a manufacturers' products liability claim against GM and other defendants that are not parties to this appeal alleging the brakes in the pickup failed to operate properly, the air bags failed to deploy and the seat belt system failed to restrain Ms. Nash from being thrown about and seriously injured. Plaintiffs also filed a breach of warranty claim. On October 21, 2004, the trial court ruled in favor of GM on its first motion for summary judgment with regard to Plaintiffs' claim for a defect in the brake system.

¶ 4 After completion of all discovery and the exchange of final witness and exhibits lists, GM filed a second motion for summary judgment on the issue of product liability for defective seat belts and air bags. The trial court granted judgment to GM on all the remaining issues holding Plaintiffs' evidence was legally insufficient to show causation. Plaintiffs dismissed the petition against the remaining defendants, with prejudice, and appealed.

¶ 5 Plaintiffs' assignments of error on appeal relate to their manufacturers' products liability claim for defective seat belts. Plaintiffs did not raise assignments of error with respect to the trial court's judgment in favor of GM on Plaintiffs' breach of warranty claim or their products liability claims for defective brakes and air bags. This matter stands submitted without appellate briefs on the trial court record. *See* Rule 13, *Rules for District Courts*, 12 O.S. Supp.2002, Ch. 2, App. 1, and Rule 1.36, *Oklahoma Supreme Court Rules*, 12 O.S. Supp.2003, Ch. 15, App.

¶ 6 This Court's standard of review of a trial court's grant of summary judgment is *de novo. Hoyt v. Paul R. Miller, M.D., Inc.*, 1996 OK 80, ¶ 2, 921 P.2d 350, 351–52. Summary judgment is proper when the evidentiary materials "establish that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Shelley v. Kiwash Elec. Co-op.*, 1996 OK 44, ¶ 15, 914 P.2d 669, 674. When this Court reviews the trial court's grant of summary judgment, all inferences and conclusions drawn from the evidence must be viewed in the light most favorable to the party opposing the motion. *Id.* Where

one party moves for summary judgment and sets forth evidence which shows no controversy as to material facts, the burden of proof shifts to the opposing party to present evidence which would justify trial on the issue. *Stephens v. Yamaha Motor Co., Ltd., Japan,* 1981 OK 42, ¶ 11, 627 P.2d 439, 441.

 ¶ 7 To maintain a cause of action under the theory of manufacturers' products liability, plaintiff must first prove the product was the cause of the injury. *Kirkland v. General Motors Corp.,* 1974 OK 52, ¶ 29, 521 P.2d 1353, 1363. Second, the plaintiff must prove the product was defective when it left the control of the manufacturer. *Id.* at ¶ 30, 521 P.2d at 1363. The existence of a defect may be proved by direct or circumstantial evidence, or a combination thereof. *Id.* at ¶ 34–5, 521 P.2d at 1364. Third, the plaintiff must prove the defect made the product unreasonably dangerous to an extent beyond which would be contemplated by the ordinary consumer who purchases the product. *Id.* at ¶ 31, 521 P.2d at 1363. "Even if the defect may not have caused the accident, if it increases the severity of the injury which would have occurred absent the defect, the manufacturer is liable for damages for increased injuries attributable to an enhanced injury." *Bishop v. Takata Corp.,* 2000 OK 71, ¶ 7, 12 P.3d 459, 461. "Proper expert opinion of the defect and its existence at time of injury may suffice, but expert opinion should not evade the factual determination of the proofs (First, Second and Third above) to be borne by the Plaintiff." *Kirkland* at ¶ 32, 521 P.2d at 1363.

 ¶ 8 Plaintiffs' first assignment of error alleges the trial court erred in determining they failed to show causation because their technical and medical expert evidence raised a genuine issue of material fact as to whether a defect in the seat belts caused additional injuries to Ms. Nash beyond that which would have been expected as a result of the collision. Where, as here, the effect of a defect in a seat belt assembly on the hu-

man body involved complex medical and biomechanical[1] questions that are beyond a jury's ordinary knowledge and common experience, expert witness testimony was the best evidence of general causation. Without such evidence, a jury would have to speculate whether a design defect in the seat belt assembly caused or exacerbated Ms. Nash's injuries. Such speculation would be error because "the mere possibility that a defect caused the injury is not sufficient." *Dutsch v. Sea Ray Boats, Inc.,* 1992 OK 155, ¶ 15, 845 P.2d 187, 191.

¶ 9 In the trial court proceeding, Plaintiffs attempted to satisfy their burden of proving causation by producing the affidavit and deposition testimony of William H. Muzzy, III. Muzzy's affidavit dated July 14, 2004, averred, "Ms. Nash would not have been permanently injured in the collision had the seatbelt system in her vehicle not had a defect." However, during his deposition taken April 19, 2005, Muzzy clarified, multiple times, he would not offer an opinion as to whether Ms. Nash's injury or the severity thereof was caused or increased by a defect in the seat belts. Specifically, Muzzy testified:

Q [By GM's counsel] Is it your position that a difference of point one g in timing of lockup can result in injury?

A [By Muzzy] No. It's my position that it is outside the range allowed by F/MVSS 209 and it exhibits the characteristics that GM had in their recall notice.

Q Okay. So you are not saying it is—you are not offering an opinion one way or the other whether this discrepancy that you document resulted in any injury to Mrs. Nash?

A No.

Q You're agreeing—I mean, when you say no, you're agreeing, you are not offering that opinion?

A I am not offering that opinion.

(Muzzy dep. p. 38, ll. 13–25; p. 39, ll.1–2.) When GM's counsel asked Muzzy whether he

---

1. Biomechanics is "the science concerned with the action of forces, internal and external, on the living body." Stedman's Medical Dictionary (25th Ed., 1989). Biomechanical experts have extensive knowledge about how human bodies move when forces are applied to them and thus may provide testimony as to how vehicle occupants move and are impacted in vehicular accidents.

had any knowledge about Ms. Nash's injuries, the following dialogue ensued:

Q And what makes you believe Ms. Nash has any injury?

A Based on the complaint.

Q Okay. You haven't seen any of the medical records?

A I have not.

Q Your assumption that Ms. Nash is— has any permanent injury from this accident is based on the complaint you've been provided by Mr. Brumley?

A Correct.

Q You would normally expect in an accident of this magnitude, that is less than 16–mile–per–hour barrier equivalent delta-V—

A Those are two different terms.

Q Okay.

A Let's use delta-V.

Q Okay. Is that what you're saying, that this is a less than 16–mile–per–hour delta-V?

A Assuming that the air bag module read it correctly, and we know it did not deploy, than I am—that's one of my assumptions, is that it read it correctly, it was less than 16–mile–an–hour delta-V, and I would expect only minor bruising and soreness.

Q Do you know whether Mrs. Nash even had any bruising?

A No, I don't.

Q If she was subjected to enough force to become injured, would you expect some bruising?

A Don't know.

(Muzzy dep. p. 69, ll. 18–25; p. 70, ll. 1–24.) Later, when GM's counsel asked Muzzy whether he had any occupant kinematic-type opinions or biomechanical opinions in this case, Muzzy confirmed that he did not. And, when GM's counsel asked Muzzy whether he could explain the mechanism of injury in this case or whether the out-of-tolerance condition that Muzzy said existed resulted in any injury to Ms. Nash, Muzzy denied he could express such an opinion. Based on these numerous statements, it was clear Muzzy was not going to offer an opinion connecting a late lock up condition allegedly existing in the seat belt assembly to any of Ms. Nash's injuries.

¶ 10 Also as proof of causation, Plaintiffs produced reports by two medical experts, Dr. La Trala G. White and Dr. Kenneth R. Trinidad. Yet, neither of Plaintiffs' medical experts' reports opined Ms. Nash's injuries were caused or exacerbated by defective seatbelts. Instead, the physicians' reports only opined Ms. Nash was injured in the automobile collision. Further, in his deposition, Dr. Trinidad specifically disclaimed having any expertise in biomechanics or occupant kinematics or in the functioning of seat belt mechanisms. Plaintiffs have thus offered no expert testimony of a causal connection between the alleged defect in the seat belts and Ms. Nash's injury, and, because discovery was completed and witness and exhibit lists were exchanged, Plaintiffs were not in a position to provide additional expert witness proof of causation.

¶ 11 Even if causation could be shown without expert witness testimony, the record is likewise devoid of any other evidence, such as Ms. Nash's affidavit or deposition testimony, which created material issues of fact regarding causation. Based on the foregoing and after *de novo* review of the record, we find Plaintiffs' failed to produce any expert or other evidence upon which a fact finder could conclude a manufacturing defect caused or increased the severity of Ms. Nash's injuries. Accordingly, the trial court did not err when it granted summary judgment to GM on Plaintiffs' manufacturers' products liability claim for a defect in the seat belt assembly.

¶ 12 Next, we reject Plaintiffs' assertion that the trial court failed to apply the correct standard in granting summary judgment. Even assuming all of Plaintiffs' evidence was true and after indulging every reasonable inference in favor of Plaintiffs, no evidence in the record before us causally connected Ms. Nash's injuries to a defect in the seat belts nor was there any evidence showing the severity of her injuries was increased as a result of such a defect.

¶ 13 For their second assignment of error, Plaintiffs contend the trial court improperly weighed the technical and medical evidence produced by GM which was inconsistent with Plaintiffs' evidence. This assignment of error has no merit. Plaintiffs failed to present any evidence on the causation element, thus, there was no contradictory evidence to weigh.

¶ 14 AFFIRMED.

HANSEN, J., and JOPLIN, J., concur.