2005 OK CIV APP 74

**STATE of Oklahoma, ex rel. Drew EDMONDSON, Attorney General, and Oklahoma State Banking Commissioner Mick Thompson, Plaintiffs/Appellants,**

v.

**CEMETERY COMPANY, INC., Defendant/Appellee.**

No. 99,974.

Court of Civil Appeals of Oklahoma, Division No. 1.

May 27, 2005.

Certiorari Denied Sept. 27, 2005.

O. Dudley Gilbert, Oklahoma State Banking Department, Oklahoma City, OK, and Lynn C. Rogers, Assistant Attorney General, Oklahoma City, OK, for Plaintiffs/Appellants.

Larry B. Click, Sapulpa, OK, and Richard K. Holmes, Hanson & Holmes, L.L.P., Tulsa, OK, for Defendant/Appellee.

## OPINION

ADAMS, Presiding Judge.

¶1 The Oklahoma Attorney General and the Oklahoma State Banking Department (OSBD, or collectively, State) appeal a trial court summary adjudication in favor of Cemetery Company, Inc. (Defendant), a non-profit corporation that owns Green Hill Memorial Gardens (the cemetery) in Creek County, Oklahoma, on State's petition seeking a declaratory judgment that Defendant must continue to comply with the Oklahoma Perpetual Care Fund Act, 8 O.S.2001 § 160 *et seq.*, and the Oklahoma Cemetery Merchandise Trust Act, 8 O.S.2001 § 301 *et seq.* (collectively, the Cemetery Trust Laws). We reverse the judgment.

¶2 OSBD is responsible for the administration and enforcement of the Cemetery Trust Laws, which require, in pertinent part: (1) contractual agreements between certain cemetery owners or organizations and purchasers of burial spaces and/or prepaid cemetery merchandise,[1] *see* 8 O.S.2001 § 162(3)

1. The Perpetual Care Fund Act refers to "customers" or "lot owners" and "cemetery" or "the owner of a cemetery," whereas the Cemetery Merchandise Trust Act refers to "purchaser" and "organization."

and 8 O.S.2001 § 302(2) and § 303; and (2) the funding of trusts with a percentage of the purchase price for each burial space and/or prepaid cemetery merchandise that are to be deposited in specified "financial institutions" which shall serve as the trustee.[2] *See* 8 O.S.2001 § 163(B) and 8 O.S.2001 § 306(A). The income generated from the "permanent trust fund to be known as the 'Perpetual Care Fund'" must be used for improvement and maintenance of the cemetery itself and care of its records. *See* 8 O.S.2001 § 163(A). The Cemetery Merchandise Trust Act provides that no part of the monies required to be held in a trust fund established thereunder shall ever be used for any purpose other than investment as authorized by 8 O.S.2001 § 306(A)[3] until delivery of the cemetery merchandise is made. *See* 8 O.S.2001 § 306(F).

¶ 3 The cemetery in this case was operated by Defendant's predecessor, a "for-profit" express business trust, from 1989 until August 28, 2001 (the for-profit period). It is undisputed that during that period, Defendant's predecessor fully complied with the Cemetery Trust Laws by depositing in trust part of the funds from the sale of burial spaces and/or cemetery merchandise, paying annual fees to OSBD, renewing its permit, submitting annual reports to OSBD regarding sales of burial spaces and prepaid cemetery merchandise, and permitting that agency to examine its records and operations.

¶ 4 During that period, the Legislature amended the Cemetery Trust Laws to exempt "nonprofit entities."[4] On August 29, 2001, Defendant was formed as a non-profit

corporation and thereafter purchased the cemetery from its predecessor on or about September 18, 2001.[5] In early 2002, one of OSBD's examiners sent letters giving Defendant notice of an upcoming examination, explaining specifically that the examination would be limited to the for-profit period. Defendant refused to allow OSBD to examine the requested records.

¶ 5 As a result, State filed this declaratory judgment action. Defendant filed an answer, admitting, *inter alia,* its refusal but claiming it is exempt from application of the Cemetery Trusts Laws because it "is a new and separate not for profit corporation." State proceeded with discovery and subsequently moved for summary judgment. According to State, because the contracts between the consumers purchasing burial spaces and/or prepaid cemetery merchandise and Defendant's for-profit predecessor were executed under the authority of the Cemetery Trusts Laws, which became a part of each contract, those laws must be construed to determine the rights and obligations of the parties under the contracts. Therefore, State argued, the protections conferred to the consumers by the Cemetery Trust Laws, including the provisions requiring OSBD to administer compliance and enforcement of those laws, and the obligations of the cemetery owner to comply with such laws must continue until fully performed in spite of the sale of the cemetery to Defendant, who is exempt as a nonprofit corporation.

¶ 6 Defendant opposed State's motion, arguing that neither its predecessor nor any consumers under the Cemetery Trust Laws

---

2. As defined by the Cemetery Trusts Laws, "financial institutions" means "a federally insured bank, trust company or savings and loan association which is authorized to do business in this state." 8 O.S.2001 § 162(4). *See also* 8 O.S. 2001 § 302(9).

3. Section 306(A) provides that "[a]ny cemetery merchandise trust funds may be invested, reinvested, exchanged, retained, sold and managed as a part of common trust funds in the manner required by and subject to the [OSBD] and at the election of the trustee."

4. Since its enactment in 1989, the Cemetery Merchandise Trust Act exempted, *inter alia,* "nonprofit corporate entities." In 1994, the Oklahoma Legislature amended the definition of

"organization" under that Act to exclude "nonprofit entities." *See* 8 O.S.Supp.1994 § 302(5). The Perpetual Care Fund Act, which was enacted in 1953, similarly exempted "nonprofit corporate entities" until its provision entitled "Exceptions to application of act" was amended to exempt "nonprofit entities." *See* 8 O.S.Supp.1995 § 168.

5. According to the Sales Agreement, the sale included the real property upon which the cemetery is located, all buildings and structures, all equipment, all files and records of property owners and "the Perpetual Care Fund at the Bank of America" in the amount of $325,659.

were parties to this action, and that State's authority, *Baker v. Tulsa Building and Loan Association,* 1936 OK 568, 66 P.2d 45, is not applicable because its holding that contracts are to be interpreted with the statutes in effect at the time of contract involved "parties to contracts and 'vested rights'" and not "non-parties or 'statutory privileges' as in the instant case." After a hearing on OSBD's motion, the trial court summarily adjudicated OSBD's petition in favor of Defendant. OSBD's appeal followed.

¶ 7 This Court's standard of review of a trial court's grant of summary judgment is *de novo. Hoyt v. Paul R. Miller, M.D., Inc.,* 1996 OK 80, ¶ 2, 921 P.2d 350, 351–52. Where the facts are not disputed, an appeal presents only a question of law. This Court has the plenary, independent, and nondeferential authority to re-examine a trial court's legal rulings. *Gladstone v. Bartlesville Independent School Dist. No. 30 (I 30),* 2003 OK 30, 66 P.3d 442.

 ¶ 8 There is no dispute in this case that, since the Legislature's amendments of the Cemetery Trust Laws, any *current* sales by Defendant are exempt from the scope of those acts and OSBD's supervision/regulation. The sole disagreement is the effect of the amendments, if any, on OSBD's supervision/regulation of the trust funds *previously* generated during the for-profit period, which Defendant now owns.

¶ 9 *Baker* held that the estate of a shareholder in a building and loan association was entitled to be paid for his interest as provided in the Oklahoma law which was in effect on the date upon which he purchased his stock rather than the law which was in effect on the date of his death.[6] The Court concluded the decedent's contract included the provisions of the statute in effect on the date he made his purchase and that the Legislature could not alter that "vested right." The

Court distinguished this vested right from "statutory privileges" which accrued to the public in general and which were subject to legislative change.

¶ 10 Defendant's first argument that *Baker* is inapplicable here because the case was between "parties to the contract" is not persuasive. Defendant is the successor owner of the cemetery and is in control of the trust funds previously created during the for-profit period. The Attorney General and OSBD are both charged under the Cemetery Trust Laws with various roles in ensuring compliance with those laws.

¶ 11 The remaining issue, as raised by the parties, is whether the purchasers of burial spaces and/or cemetery merchandise have "vested rights" acquired under their contracts, the impairment of which is protected by Article 2, § 15 of the Oklahoma Constitution,[7] or "statutory privileges" which involve public policy and change from time to time.

 ¶ 12 We agree with State that the purchasers who executed contracts pursuant to the Cemetery Trust Laws have "vested rights." Unlike the statutory privileges and exemptions discussed in *Baker* that can apply to the general public, the contracts required by the Cemetery Trust Laws apply solely to the contracting parties, as do the rights and obligations created thereunder. As explained by the Court in *Woods v. City of Lawton,* 1992 OK 167, ¶ 8, 845 P.2d 880, 882:

> A 'vested right' is the power to do certain actions or possess certain things lawfully, and is substantially a property right, and may be created either by common law, by statute, or by contract. And when it has been once created, and has become absolute, it is protected from the invasion of the Legislature by those provisions in the Constitution which apply to such rights. And a failure to exercise a vested right

---

6. The decedent, Herbert Corliss, purchased his stock in 1930, at which time the relevant statute provided that his estate should receive the full amount paid by the decedent and legal interest on that amount, less any charges against the stock. In 1933, the Legislature amended the statute to provide that the estate should receive the full amount paid by the decedent and a proportion of the profits as determined by the by-

laws, less any charges, *and* less a proportionate share of any loss. *Baker,* 1936 OK 568, ¶¶ 3,4, 66 P.2d at 48.

7. This constitutional provision provides, in relevant part, that "[n]o bill of attainder, ex post facto law, nor any law impairing the obligation of contracts, shall ever be passed."

before the passage of a subsequent statute, which seeks to divest it, in no way affects or lessens that right.

Rights are "vested" when the right of enjoyment, present or prospective, has become the property of some particular person or persons as a present interest. *See Baker*, 1936 OK 568, ¶ 8, 66 P.2d at 48.

¶ 13 As *Baker* further holds, when parties enter into a contract by virtue of authority derived from a certain act and in view of such, rights are created, defined and conferred by such act, it is elemental that the rights of the parties must be construed by the provisions of the act. The Cemetery Trust Laws, as they existed when the contracts were executed during the for-profit period, required a certain percentage of the purchase price paid pursuant to those contracts be deposited in "permanent trusts" for improvement or maintenance of the cemeteries or held in trust for investment until delivery of the cemetery merchandise to the purchasers. The intended beneficiaries of such legislative protections can only be the purchasers of the burial spaces and/or cemetery merchandise. *See Matter of Estate of Doan*, 1986 OK 15, 727 P.2d 574. As part of the protective measures intended for the trust beneficiaries, the Cemetery Trust Laws required the cemetery owners or organizations to keep books and records and to allow the OSBD to examine them.

¶ 14 Like the stockholder in *Baker*, purchasers under the Cemetery Trust Laws acquired fixed rights to both present and future acts, upon which they were entitled to rely. A vested right does not necessarily include a right to possession, *see Barnes v. Barnes*, 1955 OK 34, 280 P.2d 996, and the fact that the enjoyment is postponed to a future date does not negate the idea that a present interest is created. *See* 90 C.J.S Trusts § 26, "Time of Vesting."

¶ 15 Based thereon, we must conclude that the Legislature's amendments to the Cemetery Trust Laws, if construed to eliminate any responsibility by Defendant for complying with those laws with regard to trusts relating to contracts created during the for-profit period, would materially impair the rights and obligations of the contract entered ·

into between the cemetery owners/organizations and purchasers of burial spaces and/or cemetery merchandise and destroy the latter's vested rights in contravention of Article 2, § 15 of the Oklahoma Constitution.

¶ 16 The undisputed facts do not support the conclusion that Defendant was entitled to judgment as a matter of law. To the contrary, the undisputed facts support only the conclusion that Defendant is subject to the provisions of the Cemetery Trust Laws with regard to contracts subject to those laws created by its predecessor during the for-profit period. The trial court's judgment is reversed, and the case is remanded with instructions to grant judgment to State.

REVERSED AND REMANDED.

MITCHELL, J., and HANSEN, J. (sitting by designation), concur.