2005 OK CIV APP 37

**Kenneth FACKRELL, Plaintiff/Appellee,**

v.

**AMERICAN NATIONAL BANK, Defendant/Appellant.**

**No. 100,056.**

Court of Civil Appeals of Oklahoma, Division No. 3.

May 27, 2005.

202

Mike Mordy, Ardmore, OK, for Appellant.

Ronald E. Worthen, Ronald E. Worthen, P.C., Ardmore, OK, for Appellee.

Opinion by LARRY JOPLIN, Presiding Judge.

¶ 1 Defendant/Appellant American National Bank (Bank) seeks review of the trial court's order granting judgment to its former customer, Plaintiff/Appellee Kenneth Fackrell (Plaintiff), on his claim to funds deposited. In this proceeding, Bank complains (1) the trial court misapplied the Oklahoma Uniform Commercial Code (OUCC), 12A O.S. §§ 1–101, et seq., § 3–406; (2) Plaintiff breached his duty to Bank by failing to give timely notice of any dispute as required by § 4–406; and (3) Plaintiff ratified Bank's handling of the challenged transaction, § 3–403. Having reviewed the record, however, we hold the order of the trial court should be and hereby is affirmed.

¶ 2 In May 1993, Plaintiff opened a savings account at Bank with his father, Melvin (Father), as joint tenant with rights of survivorship and deposited $10,000.00. The signature card required the signatures of both Plaintiff and Father for withdrawals. Plaintiff testified he intended that Father should receive the interest from the account as a supplement to his retirement income, that Father should be allowed to withdraw the interest on his own signature, but that a withdrawal of principal would require the signatures of both him and Father, and that Bank had so agreed to manage the account.

¶ 3 Father died in July 2002. In August 2002, Plaintiff went to Bank to withdraw all funds and close the account. Bank first denied existence of the account, but, after further investigation, advised Plaintiff that the money had been withdrawn and the account closed in December 1993. Owing to the destruction of records in 2000 pursuant to internal Bank policy calling for the periodic destruction of inactive records more than seven years old, the only surviving Bank record was a statement of account, showing withdrawal of interest on October 1, 1993, and withdrawal of principal on December 3, 1993.

¶ 4 Plaintiff commenced the instant action in October 2002 to recover his $10,000.00 deposit under the "deposit agreement" with Bank, and, to his petition, Plaintiff attached a copy of the original signature card, deposit slip and passbook. Bank answered, denying liability, and asserted defenses, including estoppel, ratification, and liability of "the Estate of Melvin Franklin Fackrell, deceased, ... for any and all monies withdrawn from the account ... [because] such monies withdrawn were withdrawn by the said Melvin Franklin Fackrell, as the co-depositor and/or co-owner of the account."

¶ 5 At trial, the parties adduced testimony and evidence establishing the facts we have recounted. Plaintiff alleged he did not withdraw the principal, but admitted he did not monitor the account. Because of the passage of time and destruction of records, there was no direct evidence concerning precisely who withdrew the principal and closed the account, and whether regular account statements had been sent, although a Bank employee averred that, from the surviving records, it appeared the statements were, or would have been, mailed to Father's address.

¶ 6 On consideration of the evidence, the trial court concluded:

The most likely explanation for the depletion of the account was an unauthorized withdrawal by Melvin Fackrell. This is an unauthorized signature within the meaning of 12A O.S. [§ ]3–403;

The evidence is not conclusive regarding the issue of whether the statement or items were made available to the customer within one year within the meaning of 12A O.S. [§ ]4–406;

The [B]ank failed to use ordinary care in paying on an unauthorized signature;

The Plaintiff failed to use ordinary care in failing to check on the account for nearly ten years;

The negligence of the [B]ank was greater than the negligence of the customer within the meaning of 12A O.S. [§ ]3–406(b); the [B]ank's negligence is responsible for 70% of the loss and [Plaintiff's] negligence is responsible for 30% of the loss.

The [P]laintiff is entitled to judgment for $7,000.00, which constitutes 70% of the loss plus cost of the action.

IT IS THEREFORE ORDERED ADJUDGED AND DECREED that the Plaintiff ... is awarded judgment against the Defendant ... Bank in the sum of seven thousand dollars, ($7,000.00) plus the cost of this action for all of which execution may issue.

Bank appeals.

■■■ ¶ 7 We review the trial court's rulings on questions of law de novo, without deference to the lower court's conclusion. *Fanning v. Brown,* 2004 OK 7, 85 P.3d 841; *K & H Well Service, Inc. v. Tcina, Inc.,* 2002 OK 62, 51 P.3d 1219. In cases tried to the bench without a jury, we review the record to determine whether competent evidence supports the trial court's findings of fact, and if we find competent evidence to support the trial court's order, we must affirm. *K & H Well Service, Inc.,* 2002 OK 62, ¶ 9, 51 P.3d at 1223. Furthermore, "[w]here a trial court reaches a correct result although based upon incorrect reasoning, its decision will not be reversed on appeal." *Shelley v. Kiwash Elec. Co-op., Inc.,* 1996 OK 44, ¶ 16, 914 P.2d 669, 674.

■■ ¶ 8 Where two signatures are required for payment of an item, the absence of one of the signatures constitutes an "unauthorized signature" for purposes of § 3–403(a), and unless excused, bank bears liability for payment of an instrument bearing such an "unauthorized signature." *See also, Dow City Cemetery Ass'n v. Defiance State Bank,* 596 N.W.2d 77 (Iowa 1999); *Harvey v. First Nat. Bank of Powell,* 1996 WY 122, 924 P.2d 83. It additionally appears reasonably clear that a check bearing less than all signatures required by the deposit agreement between the depositor and the bank is not "properly payable" under § 4–401(a),[1] and bank bears liability for breach of its contract with its depositor if it pays such an instrument. James J. White & Robert S. Summers, *Uniform Commercial Code,* § 17–3, p. 558 (West 1972). *See also, G & R Corporation v. American Security & Trust Company,* 523 F.2d 1164, 1170 (U.S.App.(D.C.) 1975).

■■ ¶ 9 Furthermore, while § 3–406 permits the allocation of loss between a bank and its customer upon a bank's payment of a forged or altered item, § 4–406 permits the allocation of loss between a bank and its customer upon a bank's payment of an item on an unauthorized signature under some circumstances:

(a) A bank that sends or makes available to a customer a statement of account showing payment of items for the account shall either return or make available to the customer the items paid or provide information in the statement of account sufficient to allow the customer reasonably to identify the items paid....

. . . .

(c) If a bank sends or makes available a statement of account or items pursuant to subsection (a) of this section, the customer must exercise reasonable promptness in examining the statement or the items to determine whether any payment was not authorized because of an alteration of an item or because a purported signature by or on behalf of the customer was not authorized. If, based on the statement or items provided, the customer should reasonably have discovered the unauthorized payment, the customer must promptly notify the bank of the relevant facts.

(d) If the bank proves that the customer failed, with respect to an item, to comply with the duties imposed on the customer

---

1. "A bank may charge against the account of a customer an item that is properly payable from that account even though the charge creates an overdraft. An item is properly payable if it is authorized by the customer and is in accordance with any agreement between the customer and bank."

by subsection (c) of this section, the customer is precluded from asserting against the bank:

> (1) The customer's unauthorized signature or any alteration on the item, if the bank also proves that it suffered a loss by reason of the failure; . . . .

> (e) If subsection (d) of this section applies and the customer proves that the bank failed to exercise ordinary care in paying the item and that the failure substantially contributed to loss, *the loss is allocated between the customer precluded and the bank asserting the preclusion according to the extent to which the failure of the customer to comply with subsection (c) of this section and the failure of the bank to exercise ordinary care contributed to the loss.* If the customer proves that the bank did not pay the item in good faith, the preclusion under subsection (d) of this section does not apply.

> (f) Without regard to care or lack of care of either the customer or the bank, a customer who does not within one (1) year after the statement or items are made available to the customer (subsection (a) of this section) discover and report the customer's unauthorized signature on or any alteration on the item is precluded from asserting against the bank the unauthorized signature or alteration. . . .

12 O.S. § 4–406. (Emphasis added.) So, if a bank pays an item on an unauthorized signature, but does not send or make statements available so that a customer might timely discover and report the unauthorized transaction, § 4–406 permits the allocation of loss from payment on the unauthorized signature between the bank and the customer.

▆ ¶ 10 In the present case, Plaintiff testified that he neither withdrew the money from the account, nor authorized its withdrawal. Although there is no direct evidence on the question, Bank averred in its answer that Father withdrew the funds, and the evidence supports at least an inference, as the trial court concluded, that "[t]he most likely explanation for the depletion of the account was an unauthorized withdrawal by Melvin Fackrell."

¶ 11 Further, although Plaintiff apparently never asked for a statement of account, Plaintiff never received one, and there is some question whether Bank ever mailed statements to Father. But, there is absolutely no evidence (1) that Bank either mailed or made available statements to Plaintiff or Father after the account was closed, or (2) that Plaintiff, expressly or implicitly, ratified Father's withdrawal of the entire principal balance of the account.

▆ ¶ 12 Under these circumstances, the trial court did not err in characterizing the Bank's apparent payment to Father on his signature alone, without Plaintiff's counter-signature, as an "unauthorized signature within the meaning of 12A O.S. § 3–403," and exposing Bank to liability under §§ 3–403, 4–401 and/or 4–406. Considering the substantial question concerning when and if Bank sent or made statements available to Plaintiff, the trial court also did not err in concluding that § 4–406 posed no time bar to Plaintiff's assertion of claims. *See also, May–Li Barki, M.D., Inc. v. Liberty Bank and Trust Co.,* 1999 OK 87, ¶ 11, 20 P.3d 135, 140.[2] And, notwithstanding the trial court's stated reliance on § 3–406, we hold the trial court did not err in allocating the loss between Plaintiff and Bank as permitted by § 4–406, particularly considering the evidence of Plaintiff's failure to monitor the account, and Bank's failure to exercise reasonable care in paying the account on fewer than all signatures required.

---

**2.** "[Bank] argues that [plaintiff's] claims against it are barred by the statute of limitations because [plaintiff] asserted them more than three years after she wrote the checks. [Plaintiff] claims that the statute of limitations did not start to run until she had demanded repayment and [bank] had refused because her cause of action did not arise until that time. [Plaintiff] relies on *Allied Fidelity Insurance Company v. Bank of Oklahoma, N.A.,* 1995 OK 36, 894 P.2d 1101. We held in *Allied* that when a bank improperly charges its depositor's account no cause of action for repayment arises until after the depositor demands repayment and the bank refuses. The reason for the rule is that a bank and its depositor have a debtor-creditor relationship. Thus, when the bank wrongly pays, as it did here, it is regarded as having paid its own money, not its depositor's money."

¶ 13 The trial court's judgment is unaffected by error of law and is supported by competent evidence. The order of the trial court is therefore AFFIRMED.

HANSEN, J., and BUETTNER, C.J., concur.